(404) This decree was entered in the Supreme Court, and, according to the direction of the act of Assembly referred to, was also entered in the court below, to be there carried into execution. Afterwards a petition for rehearing was filed in that court, a rehearing ordered, and the cause transmitted, under the act of 1818, to this Court for rehearing.
In the second of these cases the bill was exhibited in the Court of Equity of Johnston, and ordered to the Supreme Court under its former organization. It was heard by the present Supreme Court, at a former term, and a decree pronounced for the defendants, and the bill dismissed. The decree was entered in the court below, according to the act referred to; and the decree having been enrolled in the court below, a bill of review was filed in the court below and ordered to this Court for hearing.
In this Court a motion was made to dismiss the petition for rehearing and the bill of review, upon the ground that the decrees sought to be reheard and reviewed were decrees of the Supreme Court, or decrees directed by that Court, and that, therefore, the courts below could not entertain an application to revise or reverse them.
The question was elaborately argued; in the first case, by Gaston andSeawell, in support of the motion, and Badger, contra; and in the latter case by Gaston in support of the motion, and Seawell and Badger, contra.
Whether there should be a rehearing in Benzien v. Lenoir, or whether a bill of review will lie in Griffin v. Griffin, depends upon the right construction of the acts of Assembly passed for the purpose of establishing the Court of Conference, afterwards styled the Supreme Court. *Page 191 
The first act that passed upon the subject was in 1799, entitled "An act directing the judges of the Superior Courts to meet together to settle questions of law and equity arising on the circuit (New Rev., ch. 520). This act, in the preamble, amongst other things, complains (405) of the want of uniform decisions in questions of law and equity arising on the circuits. It then proceeds to enact that the judges shall meet together at times therein fixed upon, in the city of Raleigh, for the purpose of determining all questions of law and equity arising and remaining undetermined upon the circuit. It there puts it in the power of a single judge on the circuit to adjourn questions of law arising on the circuit to the city of Raleigh, to be decided on by all the judges at their stated meetings.
It is then made the duty of the clerk of the Court of Conference to transmit a full and correct certificate of the decision of the judges to the clerk of the Superior Court of Law and Equity where the question had been depending and had arisen, and the clerk of said court shall issue execution as shall be proper in the case, or otherwise proceed as the decision of the judges may demand.
The reasons why there was a want of uniformity in judicial decisions was that the different Superior Courts were held by single judges, and there was no court established of higher grade for the purpose of making these decisions uniform, and, as might be expected, there were, on the same question, contrariant opinions. This mischief gave rise to the act I have just recited. This act did not establish a court of higher grade than the Superior Courts; it did not establish a Court of Appeals, to which an appeal lay from the Superior Courts, and in which, after an appeal, the suit was finally decided and settled; but it adopted the mode of making all the judges decide every disputed question which arose in any of the Superior Courts which the judge holding such court thought proper to adjourn to the Court of Conference.
After the judges in that court gave their opinions, those opinions were certified to the court from whence the case came, and the same proceedings were had on it as if the judges who held the court (406) had decided it alone, and had not adjourned it to the Court of Conference for the opinion of all the judges. The record between the parties was complete in the Superior Court.
It is to be kept in view that it was not necessary that the whole record should be taken to the Court of Conference; it was only necessary to transmit as much of it as set forth the questions adjourned there; after that question was decided the decision was certified to the Superior Court from whence it came, as before observed. The record sent to the Court of Conference remained there; but it was a dead letter; the Court could proceed no further upon it, and all further proceedings carried on in the *Page 192 
Superior Court, and I think, without doubt, that the judgment between the parties was in the Superior Court.
Suppose two questions of law to arise in the Superior Court, and one only to be transferred to the Court of Conference, decided upon and certified back, the other to be decided by the judge alone who held the court: there could be but one judgment in such suit, and that judgment surely would be in the Superior Court.
The act of 1810, New Rev., ch. 785, authorizes an appeal from any decision made in the Superior Court to the Court of Conference (now styled the Supreme Court), and by another act it is declared that no judge shall give an opinion in the Supreme Court from whose opinion an appeal may have been granted; but it is obvious that the regulations do not affect the present question, because the cases now before the Court were brought here by adjournment, under the act of 1799, and not by way of appeal, so that all the judges were at liberty to take part in deciding them.
The act of 1818, New Rev., ch. 962, constituting the present Supreme Court, declares that all causes pending in the then existing Supreme Court at that time shall be decided by the judges appointed by said act, and shall have, in every respect, the same effect and operation, and shall be certified and carried into effect in the same manner, in all (407) respects, as if made in the Supreme Court under its present form. It, therefore, appears that both the cases now under examination are to be decided as cases adjourned to the Court of Conference under the act of 1799. I, therefore, think that when the decrees were made in those cases, and certified to the Superior Courts respectively, those decisions or decrees were decisions or decrees of the Superior Courts. These cases were adjourned to the Supreme Court, to make all the judges parties to their decision in order thereby to make the decisions in the State uniform.
If I am right in this view of the case, it follows that a rehearing may be had in one of them, and that a bill may be brought to review the other. Many authorities have been read in this case, which no doubt were very applicable to the organization of the courts in England, but which do not apply in this case; because our courts are far from being similarly constituted with the courts in that country.